The DAVIS MANUFACTURING AND SUPPLY COMPANY, a Colorado corporation, Plaintiff,

v.

COONSKIN PROPERTIES, INC., Defendant-Appellee,

v.

ALCOA CONSTRUCTION SYSTEMS, INC., The Bank of Telluride, David H. Hirsh, Michael D. Long, d/b/a Long Bros. Corp., United Construction of Durango, Inc., Robert D. Whitaker, d/b/a Montrose Drywall Company, Genevieve S. Jansky, Animas Aggregates, Inc., Martin Young, The First National Bank of Montrose, Colorado, B & D Electric, Inc., Jack Vickery, Architect and Contractor, Gingery Associates, Inc., Engineers, James Buck Associates, Engineers, and The Public Trustee of the County of San Miguel and the State of Colorado, Defendants,

v.

RETAserv CORPORATION, Foreclosure Purchaser-Appellant,

v.

Raymond MAYER, Intervenor-Appellant,

v.

BANCO URQUIJO, S. A., Applicant for Intervention-Appellee.

No. 80CA0545.

Colorado Court of Appeals, Div. III.

Jan. 28, 1982.

Rehearings Denied Feb. 25, 1982.

Certiorari Denied June 7, 1982.

Woodrow, Roushar & Weaver, Frank J. Woodrow, Montrose, for defendant-appellee.

Fairfield & Woods, Patrick F. Kenney, Robert A. Holmes, Denver, for foreclosure purchaser-appellant.

Hamilton, Hamilton, Shand & McLachlan, P. C., E. B. Hamilton, Jr., R. Martin Rhodes, II, Durango, for intervenor-appellant.

Cashen, Cheney, Johnston, Adamson & Campbell, Thomas F. Cheney, Montrose, for applicant for intervention-appellee.

VAN CISE, Judge.

This action involves the execution sale of nonagricultural lands under order of court. RETAserv Corporation (RETAserv), the purchaser at the sale, and Raymond Mayer, the holder of a subsequent judgment lien, appeal the court's order extending the redemption period from 75 days to six

months, thereby permitting Banco-Urquijo, S.A. (Banco), a subsequent judgment lienor, to redeem and to receive a sheriff's deed. Mayer also appeals the order allowing RETAserv, the holder of the certificate of purchase, to pay his judgment and thus extinguish Mayer's right to redeem from sale and have a sheriff's deed issued to him. We reverse.

This case is a consolidation of various actions to foreclose on a mortgage, two deeds of trust, and numerous mechanics' and judgment liens on a ski lodge located in Telluride, Colorado, titled in Coonskin Properties, Inc. (Coonskin). By stipulation between the parties to these original actions, the trial court issued a decree of foreclosure in which the county sheriff was directed to sell the property "in the same manner as prescribed by statute for the sale of land on execution" and to apply the net proceeds of sale to pay off the named creditors' claims, with any balance to be paid into the registry pending further order of court. The decree also provided that, following sale, the sheriff was to execute and deliver a certificate of purchase to the highest bidder and, "upon expiration of the period of redemption provided by law," was to deliver a deed to the holder of the certificate of purchase "unless the property is sooner redeemed." Most of the parties to the stipulation had orally agreed that Coonskin should be entitled to a six month redemption period.

The sale was held on October 31, 1979. The sheriff announced at the sale that a six month redemption period would apply. RETAserv and Mayer were the principal bidders. The sheriff delivered a certificate of purchase to RETAserv, the high bidder at $550,000. After deducting the expenses of sale and the disbursements to the various creditors then of record, the balance of over $316,000 was paid by court order to Coonskin.

On December 14, 1980, in its order approving the sale after a hearing, the court found that the property was not "agricultural real estate" within the meaning of § 38–39–102(3), C.R.S.1973, and that the oral agreement as to a six month redemption period was not binding on the purchaser, RETAserv. It then ruled that the proper redemption period was 75 days as specified in § 38–39–102(1), C.R.S.1973. Coonskin then filed a timely C.R.C.P. 59 motion directed to that order.

Subsequent to the sale but prior to the expiration of the 75 day redemption period, two additional judgments were entered against Coonskin and were duly recorded. On the 75th day, Mayer, the owner by assignment of one of these judgments, filed his notice of intent to redeem. See § 38–39–103(2), C.R.S.1973. Prior to 5 p. m. on that day, RETAserv paid to the clerk of the district court the principal amount of both judgments "in full satisfaction" of those judgments. Mayer refused the tender, and RETAserv petitioned the court for an order to issue a satisfaction of this judgment.

Meanwhile, within the period prescribed in § 38–39–103(1), C.R.S.1973, Mayer tendered to the sheriff the sum necessary to redeem. The sheriff, however, refused to issue a certificate of redemption, and the offered funds were withdrawn. Mayer then filed, that same day, his motion for order for redemption, asking the court to order the sheriff to execute and deliver to him a certificate of redemption and a sheriff's deed. In the motion, he stated that he was ready, willing, and able to pay the sums necessary to redeem to such parties as the court might designate.

On March 17, 1980, Banco moved to intervene, based on a complaint in conversion filed that date against Coonskin and others.

The various pending motions were heard, and, on April 4, 1980, the court issued its order in which it found that the property was worth "considerably more than the amount paid by RETAserv." Based on that fact, plus the oral agreement by most of the original parties to a six month redemption period, the announcement thereof at the sheriff's sale, "and the existence of other potential and substantial creditors who might benefit from the value of said property," the court concluded that Coonskin "and such other judgment creditors as may

qualify" were entitled to a full six month redemption period from October 31, 1979. It then directed that RETAserv, as purchaser at the sale, or Coonskin, as owner, could pay and thereby satisfy the liens of any subsequent judgment creditors including Mayer. Finally, the order provided that in the event of redemption, RETAserv was to receive "all amounts paid, including interest as previously ordered by the court [12%], expenses of preserving the said property as are authorized by statute, as well as reasonable attorney's fees and costs expended by RETAserv in these proceedings." Banco's motion to intervene was denied.

On April 28, based on a stipulation by Coonskin, judgment was entered against Coonskin and others and in favor of Banco in the amount of approximately $1,200,000. The same day, Banco filed its notice of intent to redeem. Also on that day, RETAserv and Banco entered into a settlement agreement, which was approved by and made an order of the court. In this agreement, RETAserv acknowledged: (1) that Banco had the right to redeem from the foreclosure sale; (2) that it had received from Banco $645,872.57 in full payment of the cost of redemption; (3) that Banco was entitled to RETAserv's rights under the previous orders, including the right to pay off any and all other judgment creditors; (4) that RETAserv would surrender its certificate of purchase to the clerk of the court pending further order of court; and (5) that, at the conclusion of the redemption period, Banco would apply to the court for an order to issue sheriff's deed and RETAserv would not object thereto. The agreement further provided:

"Nothing herein shall be construed a waiver or relinquishment of any right of RETAserv Corp. to pursue its motion for new trial and any appeal thereof regarding the period of redemption herein."

On April 28 and 30, based on RETAserv's payment of $20,382.15 (the $19,958.26 principal plus interest) into the registry,[1] the court ordered the clerk to satisfy Mayer's judgment and to pay this amount to Mayer.

On May 9, on Banco's application, the six month redemption period having expired, the court authorized the sheriff to sign a certificate of redemption and a deed in favor of Banco. The deed was signed May 15.

RETAserv and Mayer both filed new trial motions directed to the April 4 order. Both motions were denied. RETAserv, in its motion and on appeal, claims the only error to have been extension of the redemption period to six months. Mayer takes the same position on extension of the redemption period, but also contends that the court erred (1) in holding that the purchaser at the sale, RETAserv, could pay Mayer's judgment and thus prevent redemption by him and (2) in the interest rate and other expenses allowed to RETAserv and Banco. Banco and Coonskin appear separately on this appeal, but take identical positions urging affirmance on all grounds.

## I. Redemption Period

RETAserv and Mayer contend that the court abused its discretion in extending the statutory redemption period from 75 days to six months. We agree.

■ The right to redeem from an execution sale is purely statutory. *Paddack v. Staley,* 13 Colo.App. 363, 58 P. 363 (1899). Sections 38–39–102(1) and 38–39–103, C.R. S.1973, specify that the owner of nonagricultural land may redeem within 75 days from date of sale and, if it does not redeem within that time, encumbrancers and lienors with liens subsequent to the lien upon which the sale was held may redeem in order of seniority within additional specified periods.

■ A court is not justified in invoking its equity powers to set aside a sale or extend the redemption period unless there have been circumstances such as fraud, deceit, or collusion by the purchaser or unless a holder of a right of redemption has been misled by erroneous information as to the applicable redemption period. *See generally Chew v. Acacia Mutual Life Insurance Co.,* 165 Colo. 43, 437 P.2d 339 (1968);

---

1. This amount was included in the amount paid by Banco to RETAserv.

*Handy v. Rogers,* 143 Colo. 1, 351 P.2d 819 (1960); *Arnold v. Gebhardt,* 43 Colo.App. 387, 604 P.2d 1192 (1980); *Kimtruss Corp. v. Westland Manor Nursing Home North, Inc.,* 39 Colo.App. 542, 568 P.2d 105 (1977); *Tekai Corp. v. Transamerica Title Insurance Co.,* 39 Colo.App. 526, 571 P.2d 321 (1977). There were no such circumstances here.

None of the participants in this appeal except Coonskin were parties to the oral agreement. There was no showing that anyone acted, delayed acting, or was misled in reliance on or as a result of the agreement or the sheriff's announcement. Any misunderstanding as to which redemption period applied was resolved by the court in its initial ruling a month before the expiration of the 75 day statutory period. Coonskin made no attempt to redeem. And, since Banco's lawsuit against Coonskin and others was not even filed until two months after the 75 day period had run, it did not have a judgment, or a lien based thereon, until two days before the expiration of the extended period.

■ That leaves price as the only "equitable factor" to be considered. The court's finding was merely that the property was worth "considerably more than the amount bid by RETAserv." However, a disparity between the market value and the price paid at sale is not controlling and, standing alone, is not sufficient cause for setting aside a sale or extending a redemption period. *Chew v. Acacia Mutual Life Insurance Co., supra; Arnold v. Gebhardt, supra.* Especially is that true where, as here, the sale was not to a creditor or lienor, no deficiency was involved, the owner did not seek to redeem, and the owner received from the sale over $300,000 in surplus cash over and above the amounts owed to the foreclosing creditors.

## II. *Subsequent Lienor's Right to Redeem*

■ Mayer contends that RETAserv, as holder of the certificate of purchase, did not have a right to prevent him from redeeming as a subsequent lienor by paying the amount of the lien and that the order directing the satisfaction of his judgment was improper. We agree.

■ The holder of a certificate of purchase on an execution sale acquires only the alternative rights to receive the redemption money, in case of a redemption, or a deed for the land after the time for redemption has expired. Section 38–39–110, C.R.S. 1973; *Bailey v. Erny,* 68 Colo. 211, 189 P. 18 (1920). Therefore, RETAserv "had no such interest in the property as would entitle [it] to pay off a subsequent judgment without the consent of the judgment creditor." It had "no right to prevent a judgment creditor from exercising his right of redemption," and Mayer "was entitled to determine for himself whether he would accept payment of his judgment, or redeem the property." *Bailey, supra.*

The trial court and counsels' reliance on *Osborne Hardware Co. v. Colorado Corp.,* 32 Colo.App. 254, 510 P.2d 461 (1973) and *Plute v. Schick,* 101 Colo. 159, 71 P.2d 802 (1937) is misplaced. In *Osborne,* the debt was paid by the holder of the certificate of purchase *on behalf of* the debtor-owner. In *Plute,* the debtor-owner had issued the purchaser a quitclaim deed which made the purchaser the owner even before issuance of the public trustee's deed. There is no dispute in the instant case about the right of the debtor to pay its own debts and to obtain a satisfaction thereof, C.R.C.P. 58(b); *Osborne, supra,* but payment was not tendered on its behalf.

### III.

Mayer also contended in his new trial motion and in his brief on appeal that the court erred in specifying that, to redeem from sale, RETAserv was entitled to receive interest on the purchase price at 12% and all of its expenses and attorney fees. Banco, in redeeming from RETAserv, paid on the basis of that order.

RETAserv, in its brief and on oral argument in this appeal, has stated that if it receives a sheriff's deed it is ready, willing and able to refund the full amount paid by Banco. Under the circumstances, that would be proper.

However, if Mayer is to receive a deed, there is no obligation on him to repay to Banco any more than Banco would have been entitled to receive had it been the holder of the certificate of purchase on redemption by Mayer. Mayer was not a party to the settlement agreement between Banco and RETAserv, and is not bound by it. Pursuant to § 38–39–101, C.R.S.1973, the purchaser can pay the taxes, any ditch or water assessments, and the insurance premiums on any insurance necessary to protect the improvements. To redeem, the owner or lienor must pay the price paid by the purchaser at the sale, "with interest as provided by law," and the additional amounts discussed above. There is no provision for payment of the purchaser's attorney's fees or any other expenses not incident to protecting the property. *See Rowe v. Tucker,* 38 Colo.App. 532, 560 P.2d 843 (1977).

The interest rate on the price paid at the sale "as provided by law" shall be "the default rate if specified in the original instrument or if not so specified at the regular rate specified in the original instrument." Section 38–39–102(1), C.R.S.1973 (1980 Cum.Supp.). Where, as here, the purchase price included an amount to pay off a number of secured notes, mechanics' liens, and judgment liens, plus a surplus over and above these debts, the interest rate on each portion of the price should be determined separately. For example, it would be 12% on amounts paying off mechanics' liens, § 38–22–101(5), C.R.S.1973 (1980 Cum. Supp.), the penalty rate (if any) or the specified rate on the portion applicable to the secured notes, etc. And, where not otherwise provided for, the rate would be at 8% compounded annually. Section 5–12–101, C.R.S.1973 (1980 Cum.Supp.).

In addition, under the circumstances here, Banco should be repaid, by the party receiving the deed, all of its expenses incurred subsequent to its acquisition of the property in maintaining and protecting the property in its then condition. (See the trial court's order of July 29, 1980.)

IV.

In view of the conclusions reached in this opinion, it is unnecessary to consider the other assignments of error.

Accordingly, it is the order of this court that the orders appealed are reversed and the cause is remanded to the trial court to conduct a hearing at the earliest practicable date to determine, consistent with this opinion, the amounts that are properly chargeable to Mayer to redeem from Banco (on the basis that Banco is the holder of the certificate of purchase) and to RETAserv to repay Banco. When those amounts are determined, Mayer shall have a reasonable time as prescribed by the trial court, within which to pay the proper amount into court for the benefit of Banco. On such payment, the sheriff's deed to Banco shall be cancelled, a new deed shall be issued to Mayer, the money shall be paid by the clerk of the court to Banco, and Mayer shall be the owner of the property free and clear of any claims of RETAserv or Banco thereto.

In the event Mayer does not pay the money into court within the prescribed time, he shall have no further rights in the property. RETAserv shall then have a reasonable time as prescribed by the trial court within which to pay its amount into court for the benefit of Banco. On such payment, the sheriff's deed to Banco shall be cancelled, a new deed shall be issued to RETAserv, the money shall be paid by the clerk to Banco, and RETAserv shall be the owner of the property free and clear of any claims of Mayer or Banco thereto.

In the event neither Mayer nor RETAserv pay the money into court within the prescribed times, Banco is the owner of the property free and clear of any claims of Mayer or RETAserv thereto.

PIERCE and KELLY, JJ., concur.