Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 12, 2018

2018 CO 12

**No. 16SC666, <u>Oakwood Holdings, LLC v. Mortgage Investments Enterprises, LLC</u>—Foreclosure—Redemption—§ 38-38-302, C.R.S. (2017)—Right to Cure.**

This case requires the supreme court to determine whether a junior lienor who has complied with its obligations under section 38-38-302, C.R.S. (2017), is entitled to redeem, or whether it has a duty to accept a tendered lien payoff from the certificate of purchase holder who bought the property at a foreclosure sale and who obtained a power of attorney from the debtor-prior owner authorizing the certificate holder to pay off the prior owner's debts.

The court concludes that under the plain language of the applicable redemption statutes, a junior lienor who has complied with its obligations by timely filing its notice of intent to redeem is entitled to do so and, at that point, has no duty to accept a tendered payoff from a certificate of purchase holder like the respondent did here. Although the debtor-prior owner had a right to cure before the foreclosure sale, the respondent gained no additional rights by obtaining a limited power of attorney from the debtor-prior owner after the sale.

Accordingly, the supreme court reverses the judgment of the court of appeals and remands this case for further proceedings.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 12

**Supreme Court Case No. 16SC666**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA1046

**Petitioner:**

Oakwood Holdings, LLC,

v.

**Respondent:**

Mortgage Investments Enterprises LLC.

**Judgment Reversed**
*en banc*
February 12, 2018

**Attorneys for Petitioner:**
Sweetbaum Sands Anderson PC
Geoffrey P. Anderson
Reagan Larkin
  *Denver, Colorado*

Navaro & Associates LLC
Steven Navaro
  *Castle Rock, Colorado*

**Attorneys for Respondent:**
Murr Siler & Accomazzo, P.C.
Joseph A. Murr
Daniel R. Delaney
Kara J. Snow
  *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1     This case involves the rights of two parties who participated in Colorado's statutory foreclosure and redemption process. Petitioner Oakwood Holdings, LLC and respondent Mortgage Investments Enterprises LLC each claim a right to the deed on a piece of foreclosed property. In 2014, Mortgage Investments purchased the property at a foreclosure sale. On or around the date of the foreclosure sale, Oakwood purchased junior liens on the property and then attempted to redeem pursuant to section 38-38-302, C.R.S. (2017). Mortgage Investments, however, did not provide redemption figures and instead, acting under a limited power of attorney granted by the prior property owner, attempted to pay off the amount due to Oakwood under the junior liens. Oakwood, however, refused the payment.

¶2     Mortgage Investments then filed the present declaratory judgment action, seeking a declaration that its payoffs were valid and that Oakwood was not entitled to redeem the property. The parties ultimately filed cross-motions for summary judgment, the district court granted summary judgment for Oakwood, Mortgage Investments appealed, and in a unanimous, published opinion, a division of the court of appeals reversed. Mortg. Inv. Enter. LLC v. Oakwood Holdings, LLC, 2016 COA 111, ___ P.3d ___. Oakwood then sought certiorari, which we granted.[1]

---

[1] Specifically, we granted certiorari to review the following issue:

> Did the court of appeals err in holding that petitioner, a junior lienor, has a duty to accept the tender of funds from the respondent, a certificate of purchase holder acting on behalf of a foreclosed debtor, after the junior lienor has filed a notice of intent to redeem but before it has tendered redemption funds.

¶3 We now reverse the division's judgment. We conclude that under the plain language of the applicable redemption statutes, a junior lienor who has complied with its obligations under section 38-38-302 by timely filing its notice of intent to redeem is entitled to redeem, and at that point, it has no duty to accept a tendered lien payoff from a certificate of purchase holder. Although a debtor-owner is sometimes entitled to cure, the statute is clear that he or she must do so before the foreclosure sale is complete, and Mortgage Investments gained no additional rights by obtaining the limited power of attorney from the debtor-prior owner after the sale in this case. Accordingly, once Oakwood complied with the statutory requirements to redeem, it was permitted to do so and had no obligation to accept what amounted to cure funds tendered by Mortgage Investments on behalf of the debtor-prior owner. The district court therefore properly granted summary judgment in Oakwood's favor.

## I. Facts and Procedural Background

¶4 The prior owners of the home at issue in this case purchased the property in 2006. By 2014, the owners had defaulted on their obligations to several homeowners' associations affiliated with their property. The senior lienor-association initiated foreclosure proceedings, and on September 25, 2014, the Sheriff's Department sold the property to Mortgage Investments at a public auction.

¶5 The next day, Mortgage Investments obtained a limited power of attorney from the previous homeowner. This limited power of attorney authorized Mortgage Investments to pay off the outstanding balances on the junior liens.

3

¶6     At about the same time, Oakwood acquired the liens held by the junior lienor-associations, and on October 1, 2014 and October 6, 2014, Oakwood filed notices of intent to redeem those liens pursuant to section 38-38-302. After receiving these notices, Mortgage Investments sent Oakwood cashier's checks, which it asserted were "being tendered on behalf of" the prior owner and as "payment in full" on the junior liens. Oakwood acknowledged receipt of these tenders but informed Mortgage Investments that it was unwilling to accept the payoffs.

¶7     Upon Oakwood's refusal of the tendered funds, Mortgage Investments filed the present declaratory judgment action, as well as a motion for a temporary restraining order and preliminary injunction. As pertinent here, Mortgage Investments' complaint sought the "entry of an order declaring that the payoffs in question are valid; [and] that Defendant Oakwood Holdings, LLC is not entitled to redeem the Property." Oakwood filed counterclaims, and subsequently, both parties moved for summary judgment.

¶8     The district court granted summary judgment in Oakwood's favor. The court began its analysis by noting that effective January 1, 2008, the pertinent statutes had eliminated a homeowner's formal statutory redemption rights after the foreclosure sale and had combined the pre- and post-sale cure periods into one before-sale cure and payoff period. Because the foreclosure sale had already occurred in this case, the court found that (1) Mortgage Investments, which was standing in the debtor-prior owner's shoes under a power of attorney, could not pay off Oakwood's liens and (2) the pertinent statutes "[did] not compel a party to accept a payment that would satisfy its debts." In support of this determination, the court observed that "the General

4

Assembly has not taken affirmative action to give a certificate of purchase holder the right to purchase recorded debts. Meanwhile, the General Assembly has specifically preserved the right of a junior lienholder to redeem." The court thus concluded that Oakwood had a right to redeem, notwithstanding Mortgage Investments' attempted payoffs.

¶9 Mortgage Investments appealed, and in a unanimous, published opinion, a division of the court of appeals reversed. Mortg. Inv., ¶ 1. As pertinent here, the division concluded that contrary to Oakwood's contention, Mortgage Investments had not attempted to make a post-foreclosure redemption. Id. at ¶ 25. Rather, it had attempted "to pay, on behalf of the debtor, outstanding liens encumbering the property it had purchased at the foreclosure sale." Id. The division noted that the redemption statute does not explicitly give a certificate of purchase holder the right to make such a payment. Id. at ¶ 27. Conversely, however, the division observed that the statute also does not explicitly give a junior lienor the right to refuse such a payment prior to the start of the junior lienor's redemption period and before the junior lienor tenders redemption funds. Id. The division thus looked to what it perceived to be the intent of the statutory scheme and concluded that "prior to the start of a junior lienor's redemption period and before a junior lienor tenders redemption funds, a certificate of purchase holder may pay, on behalf of the debtor, existing liens encumbering the foreclosed property." Id. at ¶ 37.

¶10 We then granted certiorari.

5

## II. Analysis

¶11    We begin by discussing the standard of review and the applicable principles of statutory construction. We then consider the general principles behind the right of redemption and Colorado's statutory scheme governing the right of redemption as part of the foreclosure process.

### A. Standard of Review and Principles of Statutory Construction

¶12    This case requires us to consider the pertinent redemption statutes, and we review questions of statutory interpretation de novo. UMB Bank, N.A. v. Landmark Towers Ass'n, 2017 CO 107, ¶ 22, ___ P.3d ___, ___. In construing a statute, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings." Id. If the statutory language is clear, we must apply it as written and need not resort to other rules of statutory construction. Id. Our ultimate goal is to effectuate the legislature's intent. See St. Vrain Valley Sch. Dist. RE-1J v. Loveland, 2017 CO 54, ¶ 11, 395 P.3d 751, 754. Accordingly, we must respect the legislature's choice of language, and we do not add words to the statute or subtract words from it. Turbyne v. People, 151 P.3d 563, 567–68 (Colo. 2007).

### B. The Right of Redemption: General Principles

¶13    The redemption laws were developed to help creditors "recover their just demands, nothing more." Plute v. Schick, 71 P.2d 802, 804 (Colo. 1937). The goal of redemption is to use the debtor's property to pay "as many debts as possible." Walker v. Wallace, 246 P. 553, 553 (Colo. 1926). Redemption statutes therefore seek "to

6

benefit both debtors and creditors by reducing the property owner's debt while satisfying every possible creditor through the continual redemption of the same piece of real property." First Nat'l Bank of Southglenn v. Energy Fuels Corp., 618 P.2d 1115, 1119 (Colo. 1980). Thus, when a piece of property is purchased at a foreclosure sale, a junior lienor may redeem and obtain a certificate of redemption. Sant v. Stephens, 753 P.2d 752, 756 (Colo. 1988). Such a certificate operates as an assignment of the purchaser's interest in the foreclosed property. Id. The assignment, however, is subject to the rights of others who may be entitled to redeem. Id. After all redemption periods have expired, the holder of the certificate of purchase or the lienor who last redeemed receives a deed to the property. Id.

¶14 Notably,

> [t]he right to redeem from an execution sale is a creature of statute. The right of redemption has long been recognized as a substantive right to be exercised in strict compliance with statutory terms. It is not a right derived from principles of equity, but depends entirely upon the provisions of the statute creating the right.

Johnson v. Smith, 675 P.2d 307, 310 (Colo. 1984) (citations omitted). Accordingly, the right of redemption "is not to be enlarged by judicial interpretation, yet a liberal construction is to be given the statute allowing redemption to the end that all the property of a debtor may pay as many debts as possible." Walker, 246 P. at 553.

## C. Section 38-38-302

¶15 In Colorado, the right to redeem has been codified by the General Assembly at section 38-38-302. In its current form, the statute provides that a lienor or assignee of a

7

lien is entitled to redeem if certain conditions have been met. Specifically, the statute provides, in pertinent part:

> A lienor or assignee of a lien is entitled to redeem if the following requirements are met to the satisfaction of the officer:
>
> (a) The lienor's lien is a deed of trust or other lien that is created or recognized by state or federal statute or by judgment of a court of competent jurisdiction;
>
> (b) The lien is a junior lien as defined in section 38-38-100.3(11);
>
> (c) The lienor's lien appears by instruments that were duly recorded in the office of the clerk and recorder of the county prior to the recording of the notice of election and demand or lis pendens and the lienor is one of the persons who would be entitled to cure pursuant to section 38-38-104(1), regardless of whether such lienor filed a notice of intent to cure. If, prior to the date and time of the recording of the notice of election and demand or lis pendens, a lien was recorded in an incorrect county, the holder's rights under this section shall be valid only if the lien is rerecorded in the correct county at least fifteen calendar days prior to the actual date of sale.
>
> (d) The lienor has, within eight business days after the sale, filed a notice with the officer of the lienor's intent to redeem.

§ 38-38-302(1).

¶16 The plain language of this provision makes clear that a junior lienor is "entitled" to redeem if it meets the requisite conditions, id., and it is undisputed that Oakwood has satisfied each of these conditions here. Moreover, we perceive nothing in the statute that requires a junior lienor to accept payment from a more senior lienor in satisfaction of its claim once the junior lienor has complied with the prerequisites for redemption. Had the legislature intended such a requirement, it could have so

8

provided. We, however, may not add such words to the statute. See Turbyne, 151 P.3d at 567.[2]

¶17    We are not persuaded otherwise by Mortgage Investments' assertion that the statute gives it a right to pay off a junior lien at any time prior to a junior lienor's tender of the redemption funds. Under section 38-38-104(1), C.R.S. (2017), subject to an exception not pertinent here, a debtor-owner has a right to cure before the foreclosure sale. To do so, the owner must file a written notice of intent to cure together with evidence of his or her right to cure "no later than fifteen calendar days prior to the date of sale . . . ." § 38-38-104(1)(a)(I). The statute does not provide the owner with any right to cure after the sale has occurred. See § 38-38-104(1).

¶18    Here, Mortgage Investments claims that it acquired what is essentially a right to cure by way of the power of attorney that it obtained from the debtor-prior owner the day after the foreclosure sale. We perceive nothing in the redemption statute, however, that grants Mortgage Investments greater rights than the prior owner had. Accordingly, just as the prior owner had no right to cure after the sale had occurred, Mortgage Investments had no right to pay off the junior liens after the sale had occurred and after Oakwood had filed its timely notices of intent to redeem, regardless of when Oakwood tendered its redemption funds.

---

[2] Although we reach our decision based on the statute's plain language and therefore need not turn to other tools for determining legislative intent, we note that in 2010, the General Assembly considered and rejected an amendment to the redemption statute that would have added what Mortgage Investments now contends is already there. Specifically, Senate Bill 10-93 proposed requiring "a junior lienor to accept the tendered payment and to execute a release of the lien." See S.B. 10-93, 67th Gen. Assemb., 2d Reg. Sess. (Colo. 2010). This bill, however, was never enacted.

¶19 We likewise are unpersuaded by Mortgage Investments' assertion that this court's decisions in Plute, 71 P.2d at 803–04, and WYSE Financial Services, Inc. v. National Real Estate Investment, LLC, 92 P.3d 918, 919-23 (Colo. 2004), mandate the relief that Mortgage Investments seeks.

¶20 In Plute, 71 P.2d at 803, a man named Schick held a lien on a property and purchased the property at a foreclosure sale. Thereafter, the holder of a junior lien (in this case, a judgment) sold that lien to the Plutes, and the Plutes claimed a right to redeem. Id. As soon as Schick learned of this, he tendered to the district court payment of the Plutes' judgment. Id. The Plutes, however, refused to allow the judgment to be satisfied and filed a notice of intent to redeem, although they did not tender any redemption funds to the trustee until after Schick had paid the money to the clerk of court. Id. Relying primarily on equitable principles, this court ultimately concluded that the Plutes had no right to the property but rather could only collect and satisfy their judgment. Id. at 804.

¶21 In WYSE, 92 P.3d at 919–20, a junior lienholder, National, obtained an assignment of a judgment against the debtor, gave notice of its intent to redeem, tendered payment of the statutory redemption amount to the public trustee, and received a certificate of redemption, which it recorded. Two days later, the certificate of purchase holder, Realamerica, contracted with the debtor for the right to act as her agent and to satisfy the judgment against her. Id. at 920. That same day, Realamerica tendered a cashier's check to the county court in satisfaction of the judgment, and the question became whether National's right to redeem could be extinguished by a

10

subsequent satisfaction of the underlying judgment.  <u>Id.</u> at 920–21.  We concluded that because National had complied with the statutory requirements for redemption, it was entitled to the deed to the property.  <u>Id.</u> at 923.  As pertinent here, we explained, "In the absence of any satisfaction of its judgment by <u>at least</u> the point at which it paid the public trustee, National was entitled to, and did, make redemption as permitted by statute."  <u>Id.</u> (emphasis added).  We thus concluded that National's redemption rights were necessarily unaffected by Realamerica's later attempts to satisfy the judgment.  <u>Id.</u>

¶22     For several reasons, we do not agree that <u>Plute</u> and <u>WYSE</u> support Mortgage Investments' position here.

¶23     First, both <u>Plute</u> and <u>WYSE</u> were decided under versions of the statute that preceded the legislative amendment eliminating the right of debtor-owners to redeem after the foreclosure sale.  For example, at the time that we decided <u>WYSE</u>, the statute provided, in pertinent part:

> [W]ithin seventy-five days after the date of the sale of the property by virtue of any foreclosure of a mortgage, deed of trust, or other lien or by virtue of an execution and levy, the owner of the property, or any other person liable after the foreclosure sale for the deficiency, may redeem the property . . . .

§ 38-38-302(1), C.R.S. (2004).  In 2008, however, the General Assembly repealed and reenacted section 38-38-302 in its entirety, amending all of its language.  <u>See</u> Ch. 305, sec. 21, § 38-38-302, 2006 Colo. Sess. Laws 1467–71.  As pertinent here, the amended statute, which is the one applicable in this case, removed all references to an owner's redemption after foreclosure.  <u>See</u> § 38-38-302.  For this reason alone, the analysis in <u>Plute</u> and <u>WYSE</u> does not assist Mortgage Investments.

11

¶24 Second, as Oakwood points out, <u>Plute</u> turned on the application of equitable principles. <u>See</u> <u>Plute</u>, 71 P.2d at 804. As noted above, however, the right of redemption is a creature of statute, and the right to redeem must be exercised in strict compliance with the statute's terms. <u>Johnson</u>, 675 P.2d at 310.

¶25 Finally, to the extent that Mortgage Investments suggests that the "dispositive fact" in <u>WYSE</u> was the timing of the tender there at issue and that <u>WYSE</u> stands for the proposition that a certificate of purchase holder can preclude redemption by tendering payment in full at any time before the junior lienholder tenders the redemption amount, we perceive nothing in <u>WYSE</u> that goes that far. Rather, in our view, <u>WYSE</u> simply made clear that a certificate of purchase holder could not prevent a junior lienholder from redeeming once the junior lienholder had given notice of its intent to redeem and tendered the redemption funds, as had occurred there. <u>WYSE</u>, 92 P.3d at 923. We did not reach the question presented in this case, namely, whether the certificate of purchase holder could prevent redemption under the present statute once the foreclosure sale had occurred and a junior lienor had filed a timely notice of intent to redeem.

## III. Conclusion

¶26 For these reasons, we conclude that under section 38-38-302, once the foreclosure sale was complete and Oakwood had timely filed its notice of intent to redeem, the statute entitled it to redeem, and it had no obligation to accept Mortgage Investments' tendered payoff of the junior lien. Accordingly, we reverse the judgment of the division below and remand this case for further proceedings consistent with this opinion.

12